Appeal of **FRANCIS E. SMITH.**            Docket No. 1020.
          **JOHN F. MOORS.**            Docket No. 1021.
          **C. LEE TODD.**            Docket No. 1022.

Evidence concerning the inventory values of securities owned by an investment broker and dealer *held* sufficient to show that such values were the fair market value of the securities owned.

Submitted February 16, 1925; decided March 24, 1925.

*Harvey D. Jacob, Esq.,* for the taxpayer.
*W. Frank Gibbs, Esq.,* for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

FINDINGS OF FACT.

The three individual taxpayers, John F. Moors, Francis E. Smith, and C. Lee Todd, were, during the years 1918, 1919, and 1920, members of a partnership doing business under the name and style of Moors & Cabot, having their principal place of business in the city of Boston, Mass. The partnership was, and for many years had been, engaged in the business of investment brokerage. It bought and sold securities upon the orders of customers. It bought securities for the partnership account for resale and it purchased upon the partnership account for investment. Throughout its business career this partnership had established and continued the practice of inventorying all its stock and securities every six months for its own purposes. This practice had been in vogue for approximately forty years. The inventory taken at the close of each year was carried into its regular books of account and into its income and profits tax returns and in its entirety, although the inventory contained investment stocks as well as those held for resale. The income-tax returns, therefore, were always in accordance with the partnership's own financial statement.

In April, 1917, the partnership purchased 7,270 shares of the West End Street Railway common at $51⅜ per share. At the end of the year 1917 the three members of this partnership sat in a conference for the purpose of agreeing upon the values of each and all of the securities then appearing in their inventory, and the valuations then fixed were the result of the experience and knowledge of all the partners and reflected the final judgment of the three partners as to each security value after having consulted and compared all the sources of information available. In the inventory of December 31, 1917, they thus fixed the value of 7,270 shares of the West End Street Railway common stock at $42½ per share.

The West End Street Railway Co. is a corporation owning and operating service traction lines in the city of Boston. In the spring of 1917 it found that it required additional funds, and for the purpose of raising some of such funds it offered to sell at auction a portion of its then authorized but unissued stock. The partnership of Moors & Cabot purchased at this sale 7,270 shares at $51⅜. After this sale had been completed the total outstanding common stock of the corporation was 278,000 shares. At the time of this sale the company was paying upon its common stock dividends at the rate of $3½ per share. The stock was known as an investment stock and was a security in which trust funds could be lawfully invested. There were comparatively few shares of this stock on the market, a very large proportion being held in trust funds and in permanent investments, and dividends had been regularly paid thereon.

Thereafter, an examining revenue agent checked over this inventory and reported that, acting upon information obtained from the Boston Transcript, a daily newspaper, where he found sales of this stock on the Boston Stock Exchange on December 31, 1917, at approximately $39 per share, he reduced the inventory value from $42½ to $39. The actual sales of West End Street Railway common made on the Boston Stock Exchange between the dates of December 24, 1917, and January 5, 1918, were as follows:

| Date. | Number of sales. | Total shares sold. | Selling price. | |
|---|---|---|---|---|
| | | | Low. | High. |
| **1917.** | | | | |
| Dec. 24 | 2 | 68 | 34¼ | 34½ |
| Dec. 26 | 1 | 100 | 34½ | 34½ |
| Dec. 27 | 5 | 52 | 34 | 35½ |
| Dec. 28 | 3 | 282 | 35½ | 37 |
| Dec. 28 | 2 | 90 | 38 | 39 |
| Dec. 31 | 3 | 55 | 38 | 38½ |
| **1918.** | | | | |
| Jan. 2 | 6 | 155 | 39½ | 43 |
| Jan. 3 | 8 | 143 | 40 | 43⅜ |
| Jan. 4 | 2 | 310 | 40 | 40¼ |
| Jan. 5 | No sales. | | | |

Predicating his action upon the report of the examining revenue agent, the Commissioner of Internal Revenue has asserted deficiencies in taxes against the several taxpayers named in the appeals, as follows:

John F. Moors, for the year 1918_____ $12,831.50
C. Lee Todd, for the year 1918_____  2,635.41
C. Lee Todd, for the year 1920_____     96.59
Francis E. Smith, for the year 1918_____     14.88
Francis E. Smith, for the year 1919_____    431.56
Francis E. Smith, for the year 1920_____    736.20

and from the several Commissioner's letters asserting such deficiencies each of the above-named taxpayers appeal to this Board.

### DECISION.

The deficiencies in each of the above-named appeals should be recomputed in accordance with the following opinion. Final settlement will be made upon consent or upon fifteen days' notice, in accordance with Rule 50.

### OPINION.

TRUSSELL: At the hearing of these three appeals it appeared that all differences between the several taxpayers and the Commissioner, except the one question of the valuation of the inventory of December 31, 1917, had been composed and that the Board was therefore asked only to determine the basis of the proposed deficiencies for the year 1918 as affected by the revenue agent's modification of the inventory value of the West End Street Railway Co. stock.

It appears from the record that Moors & Cabot have been for upwards of forty years engaged in the business of investment brokerage, were members of the Boston Stock Exchange, and carried on a large business as brokers, and were also frequently in the market for the purchase of stocks on their own account for investment purposes. When the firm purchased the block of stock here in question it was regarded more as an investment for the firm than as a trading stock, and the petitioners all raised the question as to whether this particular stock should not have been omitted from the inventory of securities carried by the firm and inventoried by it as securities held for sale. The Board holds the view, however, that the block of West End common was properly included in the inventory and should not now be separated therefrom for the purpose of income-tax accounting. Respecting the inventory valuation of the West End Railway stock as at the close of the year 1917, it appears that the members of the partnership, in the exercise of their best judgment and of the knowledge of all the facts concerning the market sales of such stocks, fixed the value of their stock at $42½, while the Commissioner has accepted $39 as the market value of this block of stock at the same time.

An examination of the record of the sales of this stock on the Boston Stock Exchange shows that neither one of these figures corresponds exactly with any sale made on the Boston Stock Exchange on December 31, 1917, or on January 2, 1918. A further examination of the tabulated sales of this stock on the Boston Stock Exchange shows that this stock between December 24, 1917, and January 3, 1918, was the subject of an ascending market, going gradually from $34½ on December 24 to $38½ on December 31, $43 on January 2, and $43⅜ on January 3. The sales on the Boston Stock Exchange during this time were in comparatively small lots, ranging from 2 shares to 300 shares, while the block of stock involved in these ap-

peals consisted of 7,270 shares and the total number of outstanding shares of the issuing company was 278,000. It has been claimed both in the testimony and argument that the selling values of small lots in a restricted market may not represent the true value of larger blocks of stock, and that the selling prices of 10 shares or even 100 shares in the limited market on the Boston Stock Exchange should not be accepted as the value at which 7,270 shares might have sold had they been on the market at that time. The interested parties, all of whom were, and for many years had been, acknowledged to be experienced in the investment market business, placed a value upon the block of stock here in question at $42½, which was close to but did not reach the high selling value of January 2, 1918, while the Commissioner accepts a valuation of $39, which is slightly in excess of the high selling value of December 31.

In view of all the facts as disclosed by the records of these appeals, we are led to the conclusion that the value placed upon this block of stock by the members of the firm of Moors & Cabot should not be disturbed.