*870 OPINION.
Trussell :
At the hearing of these three appeals it appeared that all differences between the several taxpayers and the Commissioner, except the one question of the valuation of the inventory of December 31, 1917, had been composed and that the Board was therefore asked only to determine the basis of the proposed deficiencies for the year 1918 as affected by the revenue agent’s modification of the inventory value of the West End Street Railway Co. stock.
It appears from the record that Moors & Cabot have been for upwards of forty years engaged in the business of investment brokerage, were members of the Boston Stock Exchange, and carried on a large business as brokers, and were also frequently in the market for the purchase of stocks on their own account for investment purposes. When the firm purchased the block of stock here in question it was regarded more as an investment for the firm than as a trading stock, and the petitioners all raised the question as to whether this particular stock should not have been omitted from the inventory of securities carried by the firm and inventoried by it as securities held for sale. The Board holds the view, however, that the block of West End common Avas properly included in the inventory and should not now be separated therefrom for the purpose of income-tax accounting. Respecting the inventory valuation of the West End Railway stock as at the close of the year 1917, it appears that the members of the partnership, in the exercise of their best judgment and of the knowledge of all the facts concerning the market sales of such stocks, fixed the value of their stock at $42%, while the Commissioner has accepted $39 as the market value of this block of stock at the same time.
An examination of the record of the sales of this stock on the Boston Stock Exchange shows that neither one of these figures corresponds exactly with any sale made on the Boston Stock Exchange on December 31, 1917, or on January 2, 1918. A further examination of the tabulated sales of this stock on the Boston Stock Exchange shows that this stock between December 24, 1917, and January 3,1918, was the subject of an ascending market, going gradually from $34% on December 24 to $38% on December 31, $43 on January 2, and $43% on January 3. The sales on the Boston Stock Exchange during this time were in comparatively small lots, ranging from 2 shares to 300 shares, while the block of stock involved in these ap *871 peals consisted of 7,270 shares and the total number of outstanding shares of the issuing company was 278,000. It has been claimed both in the testimony and argument that the selling values of small lots in a restricted market may not represent the true valué of larger blocks of stock, and that the selling prices of 10 shares or even 100 shares in the limited market on the Boston Stock Exchange should not be accepted as the value at which 7,270 shares might have sold had they been on the market at that time. The interested parties, all of whom were, and for many years had been, acknowledged to be experienced in the investment market business, placed a value upon the block of stock here in question at $42y2, which was close to but did not reach the high selling value of January 2, 1918, while the Commissioner accepts a valuation of $39, which is slightly in excess of the high selling value of December 31.
In view of all the facts as disclosed by the records of these appeals, we are led to the conclusion that the value placed upon this block of stock by the members of the firm of Moors & Cabot should not be disturbed.